**In re APPLICATIONS FOR UN-CLAIMED FUNDS SUBMITTED IN CASES LISTED ON EXHIBIT "A".**

No. 97–61892.

United States Bankruptcy Court, N.D. Georgia.

Oct. 6, 2005.

Richard A. Lee, Lee Legal Clinic, PC, Decatur, GA, for Pamela F. Perdue.

## ORDER AND NOTICE OF HEARING WITH REGARD TO APPLICATIONS FOR UNCLAIMED FUNDS

PAUL W. BONAPFEL, Bankruptcy Judge.

In each of the cases listed on Exhibit "A," a creditor to whom the trustee sent a check for a distribution in the case failed to timely present it, and the trustee paid the unclaimed funds into the registry of this Court pursuant to 11 U.S.C. § 347(a). A claims locator has filed a "Petition for Payment of Unclaimed Funds" in each case in which he requests disbursement of the unclaimed funds to an entity that seeks them. The claims locator signed and submitted each petition (actually an "application" under the nomenclature of the Federal Rules of Bankruptcy Procedure) as an attorney in fact. Neither the applicants nor the claims locator are represented by an attorney.

The applications do not clearly show that, under fundamental principles of corporate and agency law, the entities seeking the unclaimed funds are the same entities to whom the unclaimed funds are payable. Because applications for unclaimed funds in this Court frequently present similar problems that require their denial, this Order explains legal requirements with regard to applications for unclaimed funds and schedules a hearing to consider whether the applicants in these cases may be able to satisfy those requirements, notwithstanding the deficiencies in their applications.

## I.

Section 347(a) requires a trustee to pay into the bankruptcy court any distributions payable to a creditor that the creditor does not timely claim. The unclaimed funds paid into court are to be disposed of under chapter 129 of title 28 of the United States Code.

The applicable provisions of chapter 129 direct the Court to disburse unclaimed funds to the "rightful owners," 28 U.S.C. § 2041, upon "full proof of the right thereto." 28 U.S.C. § 2042. A creditor to whom a distribution in a bankruptcy case is payable retains a property interest in such funds. *See Leider v. United States*, 301 F.3d 1290, 1296 (Fed.Cir.2002). Under statutory requirements and due process principles, the Court has the duty to protect the original claimant's property interest by making sure that unclaimed funds are disbursed to their true owner. Because an application for unclaimed funds is typically considered *ex parte*, the Court must insist on exact compliance with legal requirements relating to the authority of an individual or entity to act on behalf of the owner.

The "rightful owner" of unclaimed funds paid into the Court under § 347(a) is the holder of the proof of claim on account of which the trustee made the distribution. In the case of a corporate or other legal entity, the rightful owner is the entity itself, not its owners (such as its parent corporation or its shareholders), affiliates, or subsidiaries. *See In re Senor's Q, Inc.*, 264 B.R. 669, 673 (Bankr.E.D.Cal. 2001). "Full proof of the right thereto" obviously requires credible proof that the entity seeking disbursement of the unclaimed funds is the entity entitled to them. Just as obviously, an attorney in fact seeking disbursement of unclaimed funds on behalf of the true owner must demonstrate the authority to do so.

These rules are simple enough, but many applicants and claims locators do not seem to understand their application when a corporation or other legal entity seeks unclaimed funds. Fundamental principles of corporate and agency law apply in this, as in all other, situations where legal rights and interests are at stake. Claims locators and applicants routinely ignore them in applications for unclaimed funds filed in this Court, resulting in denial of their applications.

It is elementary that a corporation is a legal entity that has a legal name. For example, a company incorporated as "ABC Financial Services, Co., Inc.," is not "ABC," "ABC Financial," "ABC Financial Services," or "ABC Financial Services Co." The name of the entity is "ABC Financial Services, Co., Inc.," and that is the entity that must file the application. The only way the Court can know who is filing the application is if the application plainly states, on its face, the exact legal name of the applicant. The Court must reject an application that does not establish the identity of the party applying for the funds by clearly stating its proper legal name.

■ Many financial institutions operate through subsidiary corporations. A second elementary principle is that corporations, even if they have common ownership, are separate entities. Consequently, affiliated corporations do not by that fact alone have the right to act on behalf of each other. For example, if "ABC Financial Services Co., Inc." is the parent of a wholly owned subsidiary incorporated as "ABC Financial *Credit* Services, Inc.," the two corporations are separate legal entities, and the affiliation between them does not authorize one to act on behalf of the other.

■ The Court must obviously reject an application if the party filing the application is not the party entitled to the funds. In the corporate context, this means that the Court cannot grant an application of a parent corporation for payment of funds that belong to its subsidiary. For example, if the subsidiary, ABC Financial Credit Services, Inc., files a proof of claim on account of which unclaimed funds are paid into court, the parent, ABC Financial Services Co., Inc., is not entitled to the funds. The subsidiary itself is the only entity entitled to the funds and it must seek them.

In the example just described, the Court must deny an application filed by the parent, ABC Financial Services Co., Inc., seeking disbursement of unclaimed funds originally payable to a subsidiary, ABC Financial Credit Services, Inc. Although there may be an obvious connection between the two, and although it is possible that if funds were disbursed on the parent's application they would end up in the subsidiary's pocket, it is not appropriate for the Court to release funds based on supposition. Businesses presumably operate through subsidiaries for valid business, legal, and tax purposes, and the Court assumes that they do not want courts in legal proceedings to disregard the separate existences that their legal structures create. Because it is important to protect the property interests of the true owner of the unclaimed funds, it is appropriate to require exacting observance of corporate formalities and legal distinctions between parent and subsidiary corporations.

■ The same principles apply if one corporation has acquired another. Assume, for example, that XYZ Credit Company has filed a proof of claim and is subsequently acquired by ABC Financial Services Co., Inc. If the two companies have *merged,* then the surviving entity by operation of law is entitled to collect any unclaimed funds with regard to the proof of claim upon proper proof of the merger. (Proper proof of the merger does not include selected pages of a filing with the Securities and Exchange Commission or a copy of an internet web page outlining the company's history and acquisitions.) Thus, if ABC Financial Services Co., Inc., is the surviving entity, it is the proper party to seek unclaimed funds. But if ABC Financial Services Co., Inc., has acquired the *stock* of XYZ Credit Company and there has not been a merger of the two companies, XYZ Credit Company remains an existing legal entity, and as such it remains the party who must claim the funds. In the latter situation, the Court will deny an application for unclaimed funds if it is filed by ABC Financial Services Co., Inc.

It may be that XYZ Credit Company is a subsidiary of XYZ Holdings, Inc., and XYZ Holdings, Inc., has merged with and into ABC Financial Services Co., Inc., which is the surviving company. In such an instance, XYZ Credit Company has not merged and is now a subsidiary of ABC Financial Services Co., Inc. Thus, XYZ Credit Company is still the legal entity entitled to the funds, and the Court will

deny an application for unclaimed funds filed by ABC Financial Services Co., Inc.

■■■■ Another fundamental principle of corporate and agency law is that a corporation can act only through its authorized agents. Thus, an application for unclaimed funds must demonstrate the authority of the person submitting the application. If the application is submitted by an attorney in fact, the application must demonstrate authority on two levels. First, it must show that the attorney in fact has been validly authorized to act on behalf of the identified applicant. Typically, this is done with a limited power of attorney executed on behalf of the applicant by its authorized representative. The power of attorney must show that the applicant has granted authority to the claims locator to act on behalf of the applicant to collect unclaimed funds. Second, the application must show that the representative of the applicant executing the power of attorney on behalf of the applicant has the authority to do so. There must be proof of this authority beyond a recitation of authority in the power of attorney.

■■■■ A recurring problem is that an individual identified only as an officer of the parent authorizes the filing of an application for a subsidiary's funds. As just explained, the Court cannot order the disbursement of unclaimed funds to an applicant unless the application shows, with appropriate proof, that an authorized representative of the applicant filed it. An officer of the parent who is not also an officer or other authorized representative of the subsidiary is not authorized to act on behalf of the subsidiary. The Court must reject an application authorized by an officer of the parent for the subsidiary's funds because it does not establish that a duly authorized representative *of the subsidiary* has authorized it. *Of course* the parent might direct its sub-

sidiary, through proper corporate action, to authorize the individual to file the paper, the subsidiary could, through proper corporate action, authorize the parent's officer to act on the subsidiary's behalf, or the individual could even be an officer of both companies. But if the application does not properly show the individual's authority, the Court cannot grant the application any more than it could permit A to retrieve unclaimed funds originally payable to B.

■■■■ If the name of the entity claiming the funds differs from the name of the original creditor to whom the trustee wrote the uncashed check, there is an obvious problem: On the record before the Court, someone is claiming funds to which it is not entitled, *i.e.,* A is attempting to collect funds originally payable to B. Under 28 U.S.C. §§ 2041 and 2042, an applicant for unclaimed funds must show, with "full proof," that it is the "rightful owner" of the unclaimed funds. Consequently, if the name of the creditor to whom the trustee paid the unclaimed funds does not match the name of the unclaimed funds applicant, the application must clearly and unequivocally explain why the applicant is entitled to funds payable on account of a proof of claim in another name and support that explanation with appropriate proof.

■■■■ If the difference arises due to a corporate name change or by operation of law, such as by a merger or appointment of a bankruptcy trustee, such that the applicant is legally the same entity as the original creditor, the applicant is entitled to the funds upon proper proof of such circumstances. Properly authenticated copies of corporate or public records (such as a secretary of state's certification of a merger or a certified copy of papers showing the appointment of a bankruptcy trus-

tee) showing a name change or merger may be sufficient for this purpose. Copies of portions of SEC filings, press releases, internet pages, chapter 11 operating reports, and lawsuits by governmental agencies are not.

It is a different situation if the applicant has acquired the claim from the original creditor by assignment. For example, ABC Financial Services Co., Inc., may have acquired a portfolio of claims from XYZ Credit Company, including a claim for which XYZ Credit Company filed a proof of claim. Alternatively, ABC Financial Services Co., Inc., may have acquired all of the assets of XYZ Credit Company. In either situation, ABC Financial Services Co., Inc., is the assignee of the claim. Rule 3001(e) of the Federal Rules of Bankruptcy Procedure prescribes the procedures for an assignee of a proof of claim to establish its status as the lawful holder of the proof of claim and as the entity entitled to distributions with regard thereto. Among other things, Rule 3001(e) provides the original creditor the opportunity to object to the transfer of the proof of claim. This procedure thus gives the original creditor the opportunity to show that it still owns the claim and provides protections against fraudulent or otherwise improper attempts to receive funds properly due to the original creditor.

In the absence of an assignee's compliance with Rule 3001(e), or some other proceeding to establish change of ownership that would provide the original creditor with the substantive equivalent of the Rule's protections, the holder of record of the proof of claim is the original creditor who filed it. For an applicant as an assignee of the original creditor to receive unclaimed funds originally payable to the original creditor, the assignee must establish its position as the "rightful owner" of the funds as a matter of record in the bankruptcy court. Ordinarily, it must do so through a procedure that provides the original creditor with the protections of Rule 3001(e), including meaningful notice consistent with due process and an opportunity to be heard if it contends it still owns the claim. Because the unclaimed funds may well be in the Court's registry because the address shown on the proof of claim was outdated at the time the trustee sent a check, considerations of due process require an applicant who is an assignee to establish that it gave notice to the original creditor as Rule 3001(e) requires at a valid and effective address. (The Court notes that it is not necessary for an assignee to seek to reopen a case for the purpose of perfecting of record an assignment of a proof of claim in connection with an application for unclaimed funds.)

There may be a discrepancy between the name of the applicant and the name of the original creditor because the original creditor identified itself in the proof of claim with an abbreviated name, a trade name, or acronym. For example, "ABC Financial Services Co., Inc." may have filed a proof of claim in the name of "ABC Financial," "ABC Credit Card," or "ABC."

The Court does not suggest that a proof of claim is rendered invalid or subject to objection because it is not filed in the exact name of the creditor; millions of such proofs of claim have been filed and paid with few, if any, adverse consequences to creditors, debtors, or trustees. But other considerations apply when funds payable with regard to such a claim end up in the Court's registry and the holder later seeks to retrieve them. At that point, the Court's duty to require "full proof" from the "rightful owner" requires that the claiming entity establish that the funds actually belong to it and that it is the same entity to whom the unclaimed funds were payable. (It should go without saying that

the original claimant has the ability to avoid this problem by using its correct legal name on proofs of claim that it files.)

 Continuing the illustration, ABC Financial Services Co., Inc., must demonstrate that it is the true owner of the unclaimed funds payable to "ABC Financial," "ABC Credit Card," or "ABC," *i.e.*, that it, in fact and in law, is the entity that filed the proof of claim and, therefore, the holder of it. The declaration of an authorized and knowledgeable officer or employee of ABC Financial Services Co., Inc., that it holds the proof of claim, that explains the difference in the names (for example, that the name on the proof of claim is a trade name or shorthand expression for the company), and that certifies that the unclaimed funds are actually payable on a debt it holds may be sufficient for this purpose.

 Finally, an applicant must establish that the debt on account of which the trustee disbursed the unclaimed funds has not been extinguished or satisfied. For example, if the trustee disbursed the funds on a claim secured by a mortgage on the debtor's real estate that has been satisfied through foreclosure or paid through a postbankruptcy sale or refinancing, the creditor is not entitled to the unclaimed funds. *See In re Acker*, 275 B.R. 143 (Bankr.D.D.C.2002). Thus, an application must affirmatively show that the debt has not been satisfied and that the applicant has a "present entitlement to the unclaimed funds sought." *Id.* at 145.

## II.

 The foregoing principles may be summarized. To enable the Court to determine that an applicant for unclaimed funds paid into the Court pursuant to 11 U.S.C. § 347(a) is the "rightful owner" that has presented "full proof" of its entitlement to them under the standards of 28 U.S.C. §§ 2041 and 2042, an application for unclaimed funds must meet the following requirements:

1. The application must clearly and unequivocally identify the entity seeking the unclaimed funds. In the case of a corporate or other legal entity, it must state the exact legal name of the entity and the name of its authorized representative with regard to the application. The application must state the mailing address of the applicant.

2. The application must be signed by a person with authority to act on behalf of the claiming entity and to seek the unclaimed funds on its behalf and include such person's address and telephone number. The signature block must clearly show the capacity in which the application is signed. For example, if the application is submitted by an individual on behalf of a claims locator authorized to act on behalf of the applicant, the signature block must be substantially in the following form:

> ABC Financial Services Co., Inc.
> By: Claims Locator Co., Inc.,
> Its Attorney In Fact
>
> By: John Doe, President
> Claims Locator Co., Inc.
> 123 Main Street
> Anywhere, GA 30303
> (999) 999–9999

3. The application must be accompanied by appropriate proof of the source of authority of the person filing the application. The Court will presume that an attorney admitted to the bar of this Court who signs an application has authority to do so. If the application is submitted by an attorney in fact, the exact legal name of the entity executing the power of attorney must be shown in the power of attorney and it must match the name of the applicant. Furthermore, the authority of the person executing the power of attorney on

behalf of the applicant must be shown, with appropriate proof. The person or entity to whom the power of attorney is granted must be the person or entity who signs the application on behalf of the applicant. The application must include names and addresses of all individuals granting and receiving authority on behalf of the applicant.

4. The application must show the name of the person or entity to whom the unclaimed funds were payable. If the name differs from the name of the applicant, the application must explain why the names differ. Appropriate proof with regard to the foregoing must be attached. Specifically, there must be an affidavit or declaration under penalty of perjury from an authorized and knowledgeable representative of the applicant stating that the unclaimed funds belong to the applicant and the basis for such statement. For this purpose, the statement of the claims locator will not ordinarily be acceptable unless it demonstrates that the claims locator is personally knowledgeable about the circumstances.

■ The Court notes that a representation in an application or in a supporting document such as a power of attorney that one company is the "successor in interest" to another company does not satisfy the requirements outlined above. Such a general statement could mean that the successor company acquired the claim by assignment as well as by merger or by operation of law in some other way. The specific manner in which the company has become the "successor in interest" must be stated and established by appropriate proof.

■ For the same reasons, an application that seeks unclaimed funds on behalf of the original holder "now known as" the applicant is not acceptable. (For example, "XYZ Credit Company n/k/a ABC Financial Services Co., Inc.") Such a representation does not establish the basis on which the claiming entity (ABC Financial Services Co., Inc.) is entitled to funds payable with regard to a proof of claim filed by another entity (XYZ Credit Company).

5. The application must state, clearly and unequivocally on its face, the amount of unclaimed funds that it seeks and must show that the applicant is presently entitled to them. Specifically, there must be an affidavit or declaration under penalty of perjury from an authorized and knowledgeable representative of the applicant stating that the applicant still holds the debt, that it has not been paid or otherwise satisfied, and that the applicant is presently entitled to the unclaimed funds. For these purposes, a statement of the claims locator will not ordinarily be acceptable unless it demonstrates that the claims locator is personally knowledgeable about the circumstances.

6. The application must state, clearly and unequivocally on its face, the facts showing that the applicant is entitled to the unclaimed funds. It is the responsibility of the applicant to demonstrate its right to the funds. *See In re Acker,* 275 B.R. 143, 144 (Bankr.D.D.C.2002). It is not acceptable for an applicant to attach an assortment of documents that may or may not establish any material facts without explaining where they came from and how they establish the applicant's rights.

7. If a single applicant, or a related group of applicants, seeks unclaimed funds in multiple cases, it is acceptable and preferable to file a single application for the funds. A single filing will facilitate the Court's review of the application's compliance with the requirements of corporate identification and authority addressed herein. It is also acceptable for two or more potential applicants to join in an application that requests disbursement to one of them. For example, if funds in

multiple cases were variously payable to "ABC Financial Services Co., Inc." and "ABC Financial Credit Services, Inc.," or variations of names used by such entities, the Court could disburse all of the funds to either company if both joined in an application in accordance with the requirements discussed above that requested such disbursement and showed that either was presently entitled to them.

## III.

▉ The applications submitted by the claims locator do not meet these standards. The applications do not clearly identify the applicants, and there are differences in the names of the applicants and the creditors to whom the unclaimed funds were payable.

In one group of cases, an individual who is the officer of a parent corporation authorized the claims locator to execute and deliver documents pertaining to unclaimed funds belonging to the parent, its affiliates, subsidiaries, and any predecessor or acquired entity. Based on that authority, the claims locator appears to be acting on behalf of a subsidiary of the parent to recover unclaimed funds that were payable to other entities; the apparent theory is that the subsidiary can get the unclaimed funds as the "successor in interest" to the original creditor, but the applications do not state the basis for such a contention.

In a second group of cases, an individual who is apparently a liquidating trustee under a confirmed chapter 11 plan of reorganization authorized the claims locator to execute and deliver documents pertaining to unclaimed funds belonging to the chapter 11 debtor, its affiliates, subsidiaries, and any predecessor or acquired entity, including a list of various companies. Based on this authority, the claims locator seeks to recover unclaimed funds that were payable to the chapter 11 debtor or the allegedly related entities. Again, the petitions do not state these facts or explain the basis on which the liquidating trustee is empowered to collect assets of the other entities.

In both instances, the claims locator has attached a confusing collection of documents that, without explanation, seek to establish someone's right to the unclaimed funds. If they do so, they do not do so clearly. In any event, the Court is unwilling to wade through the documents in an unguided effort to sort out what they might establish, particularly when there appear to be far more direct ways to establish the necessary authorization. For example, to prove the liquidating trustee's rights and powers to collect assets of the chapter 11 debtor and related entities, it would seem to be a simple matter to produce copies of the chapter 11 debtor's plan of reorganization and of the confirmation order and to point out the relevant provisions that vest the assets of the appropriate entity in the trustee. Similarly, if a subsidiary in the first group of cases is entitled to funds in a case, an authorized representative of the appropriate subsidiary could simply authorize the claims locator to seek them on its behalf. And if the unclaimed funds were payable to an original creditor different from the subsidiary, and the subsidiary claims them because it is the successor by merger to the original claimant, the application could state that fact and attach copies of relevant merger documents, accompanied by a declaration of a knowledgeable corporate representative certifying the merger, the documents, and the resulting legal status of the two entities.

In many instances, the name of the payee to whom the case trustee made a disbursement does not match the name of the entity to which the petition requests that the unclaimed funds be disbursed. More-

over, the applications do not affirmatively state that the applicant is presently entitled to the funds in question. In two cases, the funds now claimed by an applicant have already been paid out on another application, one filed by the claims locator.[1]

The Court has previously pointed out similar problems with regard to requests for disbursement of unclaimed funds in which the applicants here or their affiliates have been involved. *E.g., In re Mark Russell Chute,* Case No. 98–43102 (December 1, 2003); *In re Pauline Poteet Davis,* Case No. 98–44024 (December 1, 2003); *In re Vanthong and Somphone Keodouangdy* (November 26, 2003); *In re Antonio and Davida Griggs,* Case No. 98–90702 (November 26, 2003). The Court has also found similar deficiencies in petitions for unclaimed funds previously submitted by the claims locator. *In re Applications for Unclaimed Funds,* Case No. 97–66535, *et al.* (May 5, 2004).

As the Court stated in those cases, the Court will not continue to review petitions for unclaimed funds filed by financial institutions or professional claims locators to point out their deficiencies. In future cases, the Court will summarily deny, without prejudice, applications that do not comply with the requirements outlined above.

The usual practice of the bankruptcy judges in this district is to permit an applicant that is a corporate or other entity to retrieve unclaimed funds without the necessity of engaging counsel, notwithstanding the general rule in the Eleventh Circuit that a corporation or other entity may not appear in a federal court other than through a licensed attorney at law. *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381 (11th Cir.1985). This practice reflects the Court's desire to facilitate the proper disbursement of unclaimed funds to persons lawfully entitled to them. But the repeated failure to observe elementary principles discussed herein creates unfair burdens on the Court and the Clerk's Office that interfere with their responsibilities. Applicants or professional claims locators acting as their attorneys in fact who cannot comply with the requirements explained in this Order will not be permitted to appear without a lawyer.

## IV.

The Court's objective is to have the unclaimed funds at issue in these cases disbursed to their true owners as expeditiously as possible. The Court will, therefore, conduct a hearing at which it will hear from the claims locator and the applicants as to how that may best be accomplished. The Court will permit them to explain the legal effect of the papers already submitted, to guide the court through them, and to demonstrate the extent, if any, to which the documents satisfactorily meet the standards discussed above. The Court will also entertain any further evidence that the claims locator or the applicants desire to introduce to satisfy the Court that one or more of the claiming entities are the rightful owners of the unclaimed funds. The Court will then direct further proceedings as may be appropriate.

It is, therefore, hereby **ORDERED and ADJUDGED** and **NOTICE IS HEREBY**

---

1. Charlene Bruce, No. 96–10636 (Order entered October 23, 2003); Wilborn R. Galloway, Case No. 98–41131 (Order entered March 25, 2003). The claims locator in this case also submitted an application on behalf of another entity for payment of unclaimed funds whose disbursement had previously been directed in the case of Len Norwell, Case No. 97–62591 (Order entered September 28, 2005). The unexplained filing of applications for unclaimed funds in cases where Orders have already been entered for their disbursement violates FED. R. BANKR.P. Rule 9011 and subjects the violator to sanctions.

GIVEN that a hearing be held with regard to the subject applications for the purposes set forth above at **10 o'clock a.m. on the 17th day of November, 2005,** in Courtroom 1401, U.S. Courthouse, 75 Spring Street, S.W., Atlanta, GA.

The Clerk is directed to mail one copy of this Order and notice to each applicant and to the claims locator and to docket it in each of the listed cases.