**In re BRADFORD PRODUCTION, INC., Debtor.**

No. 80–1471.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Sept. 13, 2007.

---

*OPINION DENYING SECOND APPLI-CATION FOR PAYMENT FROM UNCLAIMED FUNDS*

PHILLIP J. SHEFFERLY,
Bankruptcy Judge.

I. *Introduction*

This matter is before the Court upon a second application for payment from unclaimed funds filed by "Bradford Production, Inc., Applicant, by and through its Assignee, Omega Consulting." The sec-

ond application recites that there are unclaimed funds in this chapter 7 case totaling $40,571.35 and requests that the Court grant the second application and remit these funds to the applicant. For the reasons explained in this opinion, the Court holds that Bradford Production, Inc. ("Bradford") is not entitled to the funds and the second application must be denied.

## II. *Facts*

This bankruptcy case was commenced as an involuntary bankruptcy case on March 27, 1980. An order for relief was entered on July 7, 1980. A chapter 7 trustee was appointed, who administered the estate and distributed the proceeds to creditors. The case was closed on July 3, 1989. The Court file reflects that $40,571.35 is presently being held by the United States Treasury and that it consists of distributions intended to be made to creditors who either did not cash the checks sent to them or could not be located. On November 28, 2006, Bradford, through "its Assignee," Omega Consulting, filed an application for payment of these unclaimed funds. On February 15, 2007, after reviewing the application and the documents filed in support of it, the Court entered an order scheduling a hearing on the application for March 30, 2007. Omega Consulting did not appear at the hearing. Two individuals did appear at the hearing: Bernice Hutzel and her son, Robert Guyn. Ms. Hutzel informed the Court that she was a former employee of Bradford and that her husband, now deceased, was the sole shareholder of Bradford at the time that the bankruptcy case was closed. Mr. Guyn informed the Court that he too was a former employee of Bradford. The records for the State of Michigan reflect that Bradford was dissolved on May 15, 1983. Ms. Hutzel informed the Court at the hearing that she was requesting that the application be granted and that the unclaimed funds be paid to Bradford, c/o Omega Consulting. On May 24, 2007, the Court entered an order denying the application without prejudice to the right to refile an application accompanied by supporting documents demonstrating an entitlement to ownership of the unclaimed funds.

On June 25, 2007, Bradford "by and through its Assignee, Omega Consulting," filed a second application for payment from unclaimed funds. The second application is signed by Eric Dangerfield as president of Omega Consulting and again recites that Omega Consulting is the "Assignee" of Bradford. The second application is accompanied by several documents. Exhibit 1 is a copy of a June 11, 2007 letter from an attorney, Jerome C. Hirsch, that explains that Mr. Hirsch had performed services as an attorney regarding the transfer of shares of stock in Bradford to John D. Hutzel in the early 1970's. The letter further indicates that "[w]hile the particular details are beyond my recollection, I am aware that John Hutzel became the sole shareholder." Exhibit 2 consists of a June 5, 2007 letter from Austin A. Kanter, a chartered financial consultant. Mr. Kanter's letter expresses some knowledge of the shareholders of Bradford, but its primary content is the disclosure that Mr. Hirsch was the attorney for Bradford who may have drafted a buy-sell agreement among its shareholders in 1963. Exhibit 3 consists of two declarations by Deborah L. Hutzel, the former assistant office manager for Bradford. The first declaration explains that Ms. Bernice Hutzel served as the vice president and a voting board member of Bradford during the time that Ms. Deborah Hutzel worked at the company from September, 1976 through February, 1980. The second declaration explains that Ms. Deborah Hutzel continued to perform some services for Bradford even after its bankruptcy case

was commenced. Exhibit 4 consists of a declaration by Mr. Guyn who explains that he was also employed by Bradford from June, 1963 until February, 1980 and that he served as its general manager from 1977 until it closed in 1980. Mr. Guyn also notes that Ms. Bernice Hutzel served on the board as vice president of the corporation from 1963 until 1980.

On July 9, 2007, Bradford, through its "Assignee," Omega Consulting, filed Supplemental Exhibits with the Court in support of the second application. The Supplemental Exhibits consist of copies of records obtained by Bradford from the Department of Labor and Consumer Affairs for the State of Michigan dated variously from 1976 through 1980 and purporting to show that Ms. Bernice Hutzel was a vice president of Bradford during those years. These records appear to have been signed by Mr. John Hutzel.

The second application, like the first application, requests that the Court enter an order releasing "unclaimed dividends" totaling $40,571.35 and specifically asks that two checks be issued, one to Bradford in the amount of $32,547.08, c/o Bernice and Deborah Hutzel, and the other in the amount of $8,114.27 to Omega Consulting.

### III. *Discussion*

Section 347(a) of the Bankruptcy Code addresses the disposition of unclaimed property in a chapter 7 case. It provides as follows:

> Ninety days after the final distribution under section 726, 1226, or 1326 of this title in a case under chapter 7, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28.

The chapter 7 trustee paid the unclaimed funds in this case into the Court pursuant to § 347(a) of the Bankruptcy Code.

Chapter 129 of title 28 governs the disposition of funds that have been deposited under § 347(a) of the Bankruptcy Code. Section 2041, "Deposit of moneys in pending or adjudicated cases," provides as follows:

> All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.
>
> This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

28 U.S.C. § 2041. The statute also provides a procedure for withdrawal of such funds:

> No money deposited under section 2041 of this title shall be withdrawn except by order of court.
>
> In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

28 U.S.C. § 2042.

■ There are three requirements that a claimant must meet to withdraw funds

held under these statutes. First, the claimant must file a petition. Bradford met this requirement by filing the second application on June 25, 2007. Second, there must be notice of the petition to the United States attorney. This requirement is met by the proof of service attached to the second application showing that a copy of the second application was served upon the United States attorney for the Eastern District of Michigan; attention Michael Wicks, Civil Division–Financial Litigation, 211 W. Fort Street, Ste. 2001, Detroit, Michigan 48226–3216, by regular U.S. mail. The third requirement is that the claimant must show that it is "entitled to any such money" by providing "full proof of the right thereto."

█ The documents filed in support of the second application, together with the statements of Ms. Bernice Hutzel at the March 30, 2007 hearing, arguably demonstrate the following. First, Ms. Bernice Hutzel was a vice president and member of the board of directors of Bradford when the bankruptcy case was filed in 1980. Second, Ms. Bernice Hutzel was married to Mr. John Hutzel, the president and a shareholder, if not the sole shareholder, of Bradford when the bankruptcy case was filed. Third, Mr. Robert Guyn was an employee and executive vice president for Bradford. Fourth, Ms. Deborah Hutzel was an assistant secretary and employee of Bradford. Fifth, Mr. Jerome Hirsh was an attorney for Bradford, as well as its corporate secretary, and he believes that Mr. John Hutzel was the sole shareholder of Bradford. Assuming the truth of all of these facts, the issue, plainly stated, is whether they are sufficient to demonstrate that Bradford, the debtor in this bankruptcy case, through its "Assignee" and through its former officer, director, and spouse of the sole shareholder in the corporation, has provided the Court with "full

proof" of the "entitlement" of Bradford to the unclaimed funds consisting of $40,571.35.

When the Court conducted the hearing on March 30, 2007 on the first application for the unclaimed funds, the Court inquired of Ms. Bernice Hutzel regarding her authority to act on behalf of Bradford, a dissolved corporation in which she was not herself personally a shareholder. The focus of the Court's inquiry at that time was more factual in nature in an effort to understand her relationship to the corporate debtor and to "its Assignee, Omega Consulting," rather than an inquiry into the legal analysis supporting the application because Ms. Bernice Hutzel herself is not an attorney nor was she represented by an attorney. Ms. Hutzel impressed the Court as being an honest and sincere individual who was forthright in answering the Court's questions as to how this application came about. Ms. Bernice Hutzel explained that Omega Consulting contacted her about bringing this application and it provided all the paperwork to her. In fact, she explained further to the Court that she was surprised to learn that there might be some possibility for her to obtain the unclaimed funds after these many years by filing an application on behalf of Bradford. After having now received a second application accompanied by a number of supporting documents, the Court has a better understanding of the circumstances that gave rise to the application and the "proof" offered to demonstrate the facts alleged in the second application. In the Court's view, the pertinent issue now is the legal authority for the second application or, to state it another way, whether the offered "proof" establishes that Bradford is "entitled" to the funds.

The only legal authority provided to the Court in the second application consists of one statutory citation to a portion of the

United States Code, two statutory citations to the Michigan Business Corporation Act and two citations to reported judicial decisions. The statutory citation to the United States Code set forth in the second application is "Section 66 of 11 U.S.C. § 106." That statutory citation requires no discussion except to note that it is a reference to a portion of the Bankruptcy Act, which was repealed by and replaced with the Bankruptcy Code in 1978. This long since repealed statute provides no authority to grant the second application even if all of the facts set forth in it and the supporting documents are accepted as true.

The two citations to the Michigan Business Corporation Act are to Mich. Comp. Laws Ann. §§ 450.1833 and 450.1834. Those two citations to Michigan law pertain to the continuation of corporate existence for the purpose of winding up the affairs of a corporation in Michigan after it has been dissolved and to the functions of the dissolved corporation, its officers, directors and shareholders under Michigan law. Neither of those statutory citations in any way provide this Court with authority to find that Bradford has demonstrated its "entitlement" to the unclaimed funds held in the United States Treasury. At most, these two citations to Michigan corporate law arguably provide support for the proposition that Ms. Bernice Hutzel may have some legal authority in Michigan to act on behalf of Bradford, as one of its officers prior to its dissolution. Even if the Court accepts that proposition of law, it does not assist the Court in determining whether Bradford, the debtor, is somehow "entitled" to the unclaimed funds in this case.

The two opinions cited in the second application, while not on point, are at least marginally relevant to the issue before this Court. The first decision is *Georgian Villa, Inc. v. United States (In re Georgian Villa, Inc.)*, 55 F.3d 1561 (11th Cir.1995). This case involved a chapter XI under the old Bankruptcy Act. After all creditors in that case were paid in full, there remained a surplus in the estate of approximately $300,000. The debtor filed a motion for payment of this surplus under 28 U.S.C. § 2042. *Id.* at 1562. The court concluded that the corporate debtor, even though it had been dormant for many years, was entitled to receipt of the surplus because all of the creditors of the estate and all of the expenses of administration of the estate had been paid in full. *Id.* at 1563–64. That case does not assist the applicant in the case at bar. First, *Georgian Villa* did not involve a chapter 7 debtor, but instead a chapter 11 debtor. Second, and more significantly in this Court's view, *Georgian Villa* involved a case where all creditors and expenses of administration had been shown to have been paid in full so that the funds in question consisted of a *surplus*. In that circumstance, with all creditors having been paid in full, the court concluded that the funds on hand should be disbursed back to the corporate debtor.

Here, there is no evidence of a surplus of funds. It is undisputed that the $40,571.35 held by the Treasury consists of proceeds that were intended to be distributed by the chapter 7 trustee to creditors of this estate. That the funds did not ultimately make their way to the creditors who were entitled to these distributions does not alter the fact that the funds belong to those unpaid creditors. The fact that some creditors could not be located and did not receive their distributions does not somehow transform the funds intended to be distributed to those creditors into a surplus that the corporate debtor can now claim. A corporate debtor does not and cannot have a claim to these funds unless and until all creditors and expenses of administration have been paid in full. *In*

*re Georgian Villa, Inc.* does not provide authority for this Court to grant the second application.

The other case cited in the second application is *In re Atkins,* 343 B.R. 283 (Bankr.M.D.Fla.2005). *Atkins* bears some similarity to the present case. In *Atkins,* the corporate debtor in a chapter 7 case filed a motion to obtain unclaimed funds in the amount of $61,670.54. *Id.* at 283. The opinion does not indicate whether these funds represented a surplus after payment of all creditors or whether they were simply unclaimed funds that were intended to be distributed to creditors who had not been located. The *Atkins* court cited to *In re Georgian Villa, Inc.* and granted the debtor's motion under 28 U.S.C. § 2042 without explanation. *Id.* at 284.

The citations to legal authority relied upon in the second application do not help Bradford. The most helpful authorities that the Court could locate regarding the second application consist of two recent unpublished decisions by Judge David T. Stosberg from the Bankruptcy Court for the Western District of Kentucky. In *In re Transport Group, Inc.,* Nos. 93–30015, 93–30116, 2007 WL 734817 (Bankr. W.D.Ky. Mar. 7, 2007) the chapter 7 debtor was a corporation. Like this case, the debtor filed a motion asking the court to release to it funds held in the registry representing distributions intended for creditors of the debtor that had been unclaimed by those creditors. Just like this case, the debtor in *In re Transport Group* cited and relied upon the now repealed § 66 of the Bankruptcy Act, and the *In re Georgian Villa* and *In re Atkins* decisions to support its motion. Judge Stosberg denied the motion because the debtor did not meet its burden to prove that it was entitled to distribution of these unclaimed funds.

■ The debtor in *In re Transport Group* then filed a motion for reconsideration of Judge Stosberg's decision. Judge Stosberg dealt with that motion for reconsideration in *In re Transport Group, Inc.,* 2007 WL 1083887 (Bankr.W.D.Ky. Apr.9, 2007), clarifying that the debtor's application must be considered under § 347(a) of the Bankruptcy Code and 28 U.S.C. § 2042. Judge Stosberg explained why a debtor is not entitled to unclaimed funds in terms that apply with equal force to the present case.

> The debtors confuse the concepts of surplus assets with unclaimed funds. Surplus assets, as the name denotes, are assets left over after the payment of all allowed claims. Unclaimed funds, however, belong to a particular creditor, that has failed to collect or receive those funds. In the cases before this Court, the assets in question are unclaimed funds, and not surplus assets as the debtors suggest. This Court must hold unclaimed funds until properly petitioned by the rightful owners of the funds. Under 28 U.S.C. § 2042, the burden of proof is upon any movant to show its right to the unclaimed funds. In these cases, the individual creditors are the "rightful owners" and, as such, only they may petition the Court for turnover of unclaimed funds.

*Id.* at * 1.

The Court adopts Judge Stosberg's analysis. The rightful owners of the unclaimed funds in this case are the creditors to whom these distributions were intended to be made. That they have not yet received their distributions does not make them any less the rightful owners of these unclaimed funds. Nor does it somehow elevate Bradford's request for these funds over the entitlement of such creditors. Creditors who filed timely proofs of claims but have not been located may still apply

to the Court for payment of their claims. There is no limitation period that would preclude them from doing so. Yet they would be prevented from receiving their funds if the Court were to grant the second application and take the legal leap that it requires by distributing these proceeds to Bradford. The Court's duty in these circumstances has been described as follows:

> A creditor to whom a distribution in a bankruptcy case is payable retains a property interest in such funds. Under statutory requirements and due process principles, the Court has the duty to protect the original claimant's property interest by making sure that unclaimed funds are disbursed to their true owner. Because an application for unclaimed funds is typically considered *ex parte,* the Court must insist on exact compliance with legal requirements relating to the authority of an individual or entity to act on behalf of the owner.

> The "rightful owner" of unclaimed funds paid into the Court under § 347(a) is the holder of the proof of claim on account of which the trustee made the distribution.

*In re Applications for Unclaimed Funds,* 341 B.R. 65, 69 (Bankr.N.D.Ga.2005) (citation omitted).

The exhibits supporting Bradford's second application in this case may provide "proof" of Ms. Bernice Hutzel's authority to act on behalf of Bradford. But they mistakenly focus on the authority of individuals to act on behalf of the *debtor.* If Ms. Bernice Hutzel was before the Court on behalf of a *creditor* of Bradford, then the exhibits might be relevant. *See Applications for Unclaimed Funds,* 341 B.R. at 69–73 (applying "[f]undamental principles of corporate and agency law" in determining whether corporate *creditors* met their burden of proving entitlement to *un-*

*claimed distributions,* as opposed to a corporate *debtor* seeking return of *surplus funds); In re Senor's Q, Inc.,* 264 B.R. 669, 672–73 (Bankr.E.D.Cal.2001) (same, finding that a corporate creditor had not been properly dissolved and was still in existence, and consequently the former CEO and owner was not entitled to receive the corporation's unclaimed distribution.) In this case, there is no *surplus* of funds; the unclaimed funds belong to the creditors not the debtor. It is therefore irrelevant whether Ms. Bernice Hutzel has the authority to act on behalf of Bradford. Because the second application fails to demonstrate that Bradford is "entitled" to the funds, the Court will enter an order denying the second application.